758 A.2d 1145 (1999)
334 N.J. Super. 274
William HEMMEN, Plaintiff,
v.
ATLANTIC CITY MEDICAL CENTER, Defendant.
Superior Court of New Jersey, Law Division, Atlantic County.
Decided July 9, 1999.
*1146 Jeffrey Sheppard, Esquire, Mutchko & Sheppard, Deptford, for Plaintiff William Hemmen.
Jeffrey S. McClain, Esquire, Fox Rothschild O'Brien & Frankel, Atlanitc City, for Defendant Atlantic City Medical Center.
SELTZER, J.S.C.
This motion tests the sufficiency of proofs which Plaintiff claims require the application of res ipsa loquitur in a medical malpractice action. The facts are relatively simple: Plaintiff was admitted to the Defendant hospital complaining of abdominal pain resulting from a condition ultimately diagnosed as chronic pancreatitis. The treatment rendered included the intramuscular administration of Demerol to control pain. Shortly after the injection, Plaintiff experienced symptoms of what ultimately proved to be permanent damage to his sciatic nerve. Plaintiff's expert neurologist produced a report which, despite an acknowledged lack of any information as to the actual injection, opined that the drug was negligently administered in too close a proximity to the sciatic nerve.
The basis for that conclusion was his assertion that, although the medical profession recognizes that a non-negligent, properly located intramuscular injection might migrate ("extravasate") through the tissues to the sciatic nerve, the occurrence is so infrequent as to merit no consideration as a cause of damage in this particular case[1]. Although the deposition testimony does not clearly reveal the basis of the opinion, a fair reading of that testimony is that the etiology of extravasation "is not a common occurrence by any means" and that in determining the cause of an unexpected outcome, "It is a matter of probability. If something occurs one time in a million and something occurs one *1147 time in ten ... you have to think about what is the most, the greatest probability." Defendant seeks to exclude this opinion as a "net" opinion and as insufficient to invoke the doctrine of res ipsa loquitur.
That doctrine represents a rule of circumstantial evidence. Roper v. Blumenfeld, 309 N.J.Super. 219, 229-30, 706 A.2d 1151 (App.Div.), certif. den., 156 N.J. 379, 718 A.2d 1208 (1998). It " permits an inference of Defendant's negligence", Buckelew v. Grossbard, 87 N.J. 512, 525, 435 A.2d 1150 (1981), and is "grounded in probabilities as to an accident's having occurred without negligence on the part of a Defendant." Roper, supra, at 230, 706 A.2d 1151. In the medical malpractice area, the doctrine excuses a Plaintiff from the necessity of producing expert opinion "as to standard of care and deviation if evidence is presented which would allow the jury to reasonably infer that the harm would not have occurred but for the doctor's negligence." id.
The application of the doctrine requires a showing that "(a) the occurrence itself ordinarily bespeaks negligence; (b) the instrumentality was within the Defendant's exclusive control; and (c) there is no indication ... that the injury was the result of Plaintiff's own voluntary act or neglect." Bornstein v. Metropolitan Bottling Co., 26 N.J. 263, 269, 139 A.2d 404 (1958). Clearly the latter two conditions have been met and we are concerned only with the first. Defendant contends that since the medical profession recognizes that the injury may be caused by the non-negligent administration of the drug, Plaintiff may not assert negligence, the only proof of which is the result itself. This is an incorrect statement of the law. "Whether an occurrence `ordinarily bespeaks negligence' depends upon the balance of the probabilities being in favor of negligence." Buckelew v. Grossbard, supra, 87 N.J. at 526, 435 A.2d 1150, Annotation, Medical Malpractice: Res Ipsa Loquitur In Negligent Anesthsia Cases, 49 A.L.R.4th 63, 108-112 (1986).
This is equivalent to a showing that the result would probably not have occurred in the absence of negligence, and, accordingly, the party seeking the benefit of the doctrine "is not required to eliminate with certainty all other possible causes or inferences.... All that is needed is evidence from which reasonable persons can say that on the whole it is more likely that there was negligence associated with the cause of the event than there was not." W. Page Keeton et. al., Prosser and Keeton on the Law of Torts, Section 39, at 248 (5th ed.1984) quoted in Roper, supra, 309 N.J.Super. at 232, 706 A.2d 1151. This requires proof that when a particular result occurs, it flows more times than not from a particular cause.
Ordinarily, lay persons can determine the relative probability that the event was caused by negligent or non-negligent actions. In medical malpractice actions, however, that may not be true and in those situations there must be expert testimony that the medical community recognizes that the result bespeaks negligence; that is, the result, when it occurs, is caused more often than not by negligent conduct. Buckelew, supra, at 527, 435 A.2d 1150; Roper, supra, at 231, 706 A.2d 1151; Prosser, supra, at 249.
With that background, I turn to the opinion rendered here. When the matter was first before me, I determined that it was impermissible to opine that the rarity of the result itself bespeaks negligence. The fact that non-negligent injection rarely causes sciatic nerve damage while negligent injection will invariably cause injury does not help us in determining whether the result, once it occurs, was, more likely than not, negligently caused. This is best seen by example. Assume that 1,000 intramuscular injections of Demerol occur in the relevant statistical sample and that in three cases sciatic nerve damage results. If it is known that in each case the injection was appropriately delivered, there would be no basis for concluding that a fourth adverse result was more probably the result of negligence than not. It is for *1148 this reason that Prosser, in the same section quoted by Roper says, "Courts occasionally have fallen into the error of saying that because in the ordinary case no injury results, the jury may be permitted to conclude that there must have been negligence in the particular instance. This is clearly wrong, since at issue is the probability that an infrequent adverse result was caused by negligence, not the probability that it would happen at all."
The California Supreme Court considered this issue in Siverson v. Weber, 57 Cal.2d 834, 22 Cal.Rptr. 337, 372 P.2d 97 (1962) and concluded that testimony to the effect that a fistula following a hysterectomy is not a common complication "means only that they are a rare complication and does not mean that, when this unusual event does occur, there is a probability that it was caused by negligence rather than the various factors not involving negligence which were mentioned by ... (the) medical witnesses. The fact that a particular injury ... is something that rarely occurs does not in itself prove the injury was probably caused by ... negligence..." Cf. Smallwood v. Mitchell, 264 N.J.Super. 295, 297-98, 624 A.2d 623 (App. Div.1993).
I recognized that the expert may have been reporting that the medical community understands that of the cases of drug induced sciatic nerve damage, negligence is the most frequent cause. Such a report, however, must rest upon the experts experience or upon textual support. Connors v. University Associates, 769 F.Supp. 578, 587 (D.Vt.1991) aff'd 4 F.3d 123 (2d Cir.1993). In the absence of such a basis, the opinion of the relative frequency of negligent and non-negligently caused damage would be an inadmissible net opinion, bereft of any factual underpinning. Smart SMR v. Fair Lawn Board of Adj., 152 N.J. 309, 334, 704 A.2d 1271 (1998). Accordingly I permitted the expert to amend his report to indicate the basis for his contention that the medical profession recognizes the greater frequency of negligence as a cause of sciatic nerve injury. He has been unable to do so and I conclude that no such evidence is available.
Accordingly, because Plaintiff's expert is unable to provide a basis for the application of the doctrine of res ipsa loquitur and because there is no other basis for an opinion that Defendant was negligent, I bar the testimony of Plaintiff's expert and enter judgment in favor of Defendant.
NOTES
[1] I assume that the opinion, if sufficiently grounded, would be admissible. I do note however that the opinion is actually nothing more than an inference. Although expert recitation may be required of the facts from which an inference may be drawn and which are generally not known by laypeople, I am not sure that the inference itself (which may, after all, be drawn as easily by laypeople as by experts) is a proper subject of testimony. The conclusion represented by the inference does not require the use of "scientific, technical or other specialized knowledge". N.J.R.E. 702.