**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3499-22

MARGARET KLEINMAN,
ESQ.,

      Plaintiff-Appellant,

v.

HACKENSACK UNIVERSITY
MEDICAL CENTER, MARIA
GODEVAS, R.N., and
ANGELA GONZALEZ,

      Defendants-Respondents.

_____

Submitted May 21, 2024 – Decided September 6, 2024

Before Judges Gooden Brown and Natali.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Docket No. L-3724-21.

John L. Weichsel, attorney for appellant.

Connell Foley LLP, attorneys for respondents (Brian G. Steller, of counsel; Thomas D. Forrester, Jr., of counsel and on the brief).

PER CURIAM

Plaintiff Margaret Kleinman, a licensed attorney, appeals from a June 23, 2023, Law Division order dismissing her complaint with prejudice against defendants Hackensack University Medical Center (HUMC), Maria Godevas, a HUMC nurse, and Angela Gonzales, a HUMC resident, for failing to file a timely affidavit of merit (AOM) as required by N.J.S.A. 2A:53A-27. For the reasons that follow, we reverse.

A motion to dismiss for failure to provide an AOM is equivalent to a motion to dismiss for failure to state a claim. N.J.S.A. 2A:53A-29. As a result, "we derive the facts from plaintiff's complaint" and "recite them in the light most favorable to plaintiff." Nostrame v. Santiago, 213 N.J. 109, 113 (2013).

On June 14, 2020, plaintiff's sister had plaintiff transported to HUMC's emergency room for treatment of right hip pain that prevented her from ambulating. During her treatment at the hospital, information was erroneously entered into plaintiff's medical records that confused her with a family member with mental illness. Defendants recorded that plaintiff had a "history of [s]chizophrenia or [b]ipolar disorder," was "not currently on medications," and "need[ed a p]sychiatric evaluation." However, plaintiff "ha[d] no history of schizophrenia," nor had she ever "been diagnosed or treated for any psychiatric illness." Among other things, the error resulted in plaintiff being "involuntarily

A-3499-22

committed" for twelve days and risked her being transferred to "disability inactive status" as an attorney, see Rule 1:20-12(a).[1]

On June 8, 2021, plaintiff filed a three-count complaint against defendants alleging medical malpractice, defamation, and infliction of emotional distress. Plaintiff sought compensatory and punitive damages, among other relief. Defendants filed a contesting answer, demanding an AOM. On March 31, 2023, the motion judge denied plaintiff's motion for an order waiving the AOM requirement under the common knowledge exception and ruled that AOMs were required for the negligence asserted in her complaint. The judge later denied plaintiff's motion for reconsideration. When plaintiff failed to produce the AOMs after the statutory time period and an extension expired, the judge dismissed the complaint with prejudice in a June 23, 2023, order.

In an oral decision on the record, the judge explained that "the [c]ourt [was] constrained to comply with [N.J.S.A. 2A:53A-27]," which "clearly s[tates that] if an affidavit is not filed within the time period set forth by the statute, and/or any extensions, a matter sounding in medical malpractice or negligence

---

[1] Rule 1:20-12(a) provides that "[w]hen an attorney who is admitted to practice in this state has been judicially declared mentally incapacitated or involuntarily committed to a mental hospital, the Supreme Court, on proof of the fact, shall enter an order transferring the attorney to disability inactive status."

cannot proceed forward as a matter of law." Further, the judge reasoned that although the complaint alleged intentional torts and other causes of action, because there was "nothing before th[e c]ourt that indicate[d] that there was any . . . intentional act" on the part of defendants to defame plaintiff, "at its core," plaintiff was asserting a medical malpractice claim that could not proceed without an AOM. In that regard, the judge described plaintiff's arguments as "simply . . . a back-door attempt" to avoid the AOM requirement.

In this ensuing appeal, plaintiff argues the judge erred because an AOM was not required under the common knowledge doctrine where another person's mental illness was carelessly entered into plaintiff's medical record. Plaintiff also asserts that defamation and infliction of emotional distress are "ordinary negligence" claims, not subject to the AOM statute. Plaintiff urges us to reverse the dismissal and apply common knowledge to the malpractice claim so that the entire case can proceed as an ordinary negligence case. In the alternative, if we affirm the dismissal of the malpractice count, plaintiff asserts the defamation and emotional distress counts should still proceed as ordinary negligence claims because, contrary to the judge's reasoning, intentional conduct was not required for either cause of action.

A-3499-22

We review a trial court's ruling on a motion to dismiss de novo, without deference to the judge's legal conclusions. Dimitrakopoulos v. Borrus, Goldin, Foley, Vignuolo, Hyman & Stahl, P.C., 237 N.J. 91, 108 (2019). We must "'pass no judgment on the truth of the facts alleged' in the complaint and must 'accept them as fact only for the purpose of reviewing the motion to dismiss.'" Mueller v. Kean Univ., 474 N.J. Super. 272, 283 (App. Div. 2022) (quoting Banco Popular N. Am. v. Gandi, 184 N.J. 161, 166 (2005)). Accordingly, our inquiry is to be "undertaken with a generous and hospitable approach," affording plaintiff "every reasonable inference of fact." Printing Mart-Morristown v. Sharp Elecs. Corp., 116 N.J. 739, 746 (1989).

Likewise, we "review[] de novo the statutory interpretation issue of whether a cause of action is exempt from the [AOM] requirement," owing no deference to the trial court's opinion. Cowley v. Virtua Health Sys., 242 N.J. 1, 14-15 (2020) (citing Triarsi v. BSC Grp. Servs., LLC, 422 N.J. Super. 104, 113 (App. Div. 2011)), rev'g, Cowley v. Virtua Health Sys., 456 N.J. Super. 278, 290 (App. Div. 2018). Under N.J.S.A. 2A:53A-29, if a plaintiff is required to provide an AOM but fails to do so, "it shall be deemed a failure to state a cause of action," and "requires a dismissal of the complaint with prejudice," Ferreira v. Rancocas Orthopedic Assocs., 178 N.J. 144, 146-47 (2003).

A-3499-22

We first consider plaintiff's argument that the judge erred by rejecting her contention that an AOM is not required based on the common knowledge exception to N.J.S.A. 2A:53A-27. N.J.S.A. 2A:53A-27 requires a plaintiff alleging an "act of malpractice or negligence by a licensed person in his [or her] profession or occupation" to provide an AOM to each defendant within the timeframe set forth in the statute. An AOM is "an affidavit of an appropriate licensed person that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional or occupational standards or treatment practices." N.J.S.A. 2A:53A-27. Physicians, nurses, and health care facilities, such as defendants, are "licensed person[s]" under the statute. N.J.S.A. 2A:53A-26(f), (i), (j).

"The purpose of the [AOM] statute is to weed out frivolous complaints, not to create hidden pitfalls for meritorious ones." Buck v. Henry, 207 N.J. 377, 383 (2011). In determining whether the AOM statute applies to a particular claim, courts consider three factors:

> (1) whether the action is for "damages for personal injuries, wrongful death or property damage" (nature of injury); (2) whether the action is for "malpractice or negligence" (cause of action); and (3) whether the "care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the

6

complaint [] fell outside acceptable professional or occupational standards or treatment practices" (standard of care).

> [Couri v. Gardner, 173 N.J. 328, 334 (2002) (alteration in original) (quoting N.J.S.A. 2A:53A-27).]

The common knowledge doctrine is an exception to the AOM requirement that arises when the claimed malpractice or professional negligence involves matters of common knowledge. Hubbard ex rel. Hubbard v. Reed, 168 N.J. 387, 394 (2001). The exception applies only in the rare case where "the carelessness of the defendant is readily apparent to anyone of average intelligence," Rosenberg by Rosenberg v. Cahill, 99 N.J. 318, 325 (1985), and when expert testimony "is not required to prove a professional defendant's negligence," Cowley, 242 N.J. at 8. It applies "where 'jurors' common knowledge as lay persons is sufficient to enable them, using ordinary understanding and experience, to determine a defendant's negligence without the benefit of the specialized knowledge of experts.'" Bender v. Walgreen E. Co., Inc., 399 N.J. Super. 584, 590 (App. Div. 2008) (quoting Hubbard, 168 N.J. at 394) ("An [AOM] is not required in a case where the 'common knowledge' doctrine applies" which is where "expert opinion is not required to establish the duty or its breach").

Our courts have established that the common knowledge exception is properly applied in cases "'involv[ing] obvious or extreme error.'" Cowley, 242 N.J. at 11 (quoting Cowley, 456 N.J. Super. at 290). For example, the exception has been applied where a dentist extracted the wrong tooth, Hubbard, 168 N.J. at 396, where a doctor pumped gas instead of fluid into a patient's uterus causing a fatal air embolism, Est. of Chin v. Saint Barnabas Med. Ctr., 160 N.J. 454, 471 (1999), and where a pharmacist filled a prescription "with a drug other than the one prescribed," Bender, 399 N.J. Super. at 591. See Est. of Chin, 160 N.J. at 471 (collecting cases).

Here, plaintiff claims the common knowledge doctrine applies, rendering an AOM unnecessary, because "the error was one of inputting" information, and an expert is not required to demonstrate that "putting someone else's mental illness on another patient's record" is negligent. We agree. In determining whether an AOM is required, "'courts must look to the underlying factual allegations, and not how the claim is captioned in the complaint. . . . [I]t is the nature of the proof required that controls.'" Triarsi, 422 N.J. Super. at 114 (alteration and omission in original) (quoting Syndicate 1245 at Lloyd's v. Walnut Advisory Corp., 721 F. Supp. 2d 307, 315 (D.N.J. 2010)). "'Where the allegations do not require proof of a deviation from a professional standard of

care, no affidavit is required.  Cases fitting this categorization are referred to as 'common knowledge' cases.'"  Ibid. (quoting Syndicate, 721 F. Supp. 2d at 315).

In her first count, plaintiff alleged that defendants "inappropriately asked" her sister whether there was a family history of "psychiatric issues."  Plaintiff alleged that after her sister discussed a relative's "history of schizophrenia and inability to live independently," defendants "breached their duty of care" by confusing her with her family member, and "wrongly writing [the family member's] history of schizophrenia on [p]laintiff's record."  Plaintiff's allegations do not require expert testimony to explain that the entry of inaccurate statements into a patient's medical record constitutes negligence.  Her claim does "not require proof of a deviation from a professional standard of care," Syndicate, 721 F. Supp. 2d at 315, but "instead depends on proof of the parties' conduct," Triarsi, 422 N.J. Super. at 117.

In Palanque v. Lambert-Woolley, 168 N.J. 398, 400-01, 406 (2001), our Supreme Court held that a doctor's misreading of a patient's test results and subsequent misdiagnosis, which led to the performance of unnecessary surgery, constituted "careless acts [that] are quite obvious."  As such, the patient "need not present expert testimony at trial to establish the standard of care."  Id. at 406. Similarly, in Estate of Chin, where a gas line instead of a fluid line was

accidentally hooked up to the patient during a surgical procedure, "causing . . . gas to be introduced into [the patient's] coronary arteries and resulting in the air embolism that killed her," the Court applied the common knowledge exception because the case "'hinged primarily on the jury's determinations regarding who did what with the exhaust line, rather than with regard to professional standards of care.'" 160 N.J. at 460, 471 (quoting Est. of Chin v. Saint Barnabas Med. Ctr., 312 N.J. Super. 81, 93 (App. Div. 1998), aff'd, 160 N.J. at 459).

Here, just as in Palanque and Estate of Chin, plaintiff's malpractice claim hinges on who was responsible for inputting inaccurate information into plaintiff's medical record, rather than with professional standards of medical care. Because plaintiff's medical malpractice claim does not require expert testimony, we conclude the judge erred in finding the AOM statute applied. Consequently, we reverse the dismissal of count one and remand for further proceedings consistent with this opinion.

Turning to plaintiff's defamation claim, in count two, plaintiff alleged that defendants "acted negligently and with reckless disregard for the truth in writing [her family member's] history of schizophrenia" on plaintiff's medical records, despite plaintiff and her family members' "repeated[] deni[al]" of any history of mental illness. According to plaintiff, defendants "republished the false,

defamatory statements" of her "uncontrolled" schizophrenia and "declining" mental health to other doctors and third-party medical facilities.

"In a general defamation case, a plaintiff claiming to be damaged by a false statement will succeed if he [or she] shows that the speaker acted negligently in failing to ascertain the truth of the statement." Senna v. Florimont, 196 N.J. 469, 474 (2008). We have explained:

> A defamatory statement is one that is false and 1) injures another person's reputation; or 2) subjects the person to hatred, contempt or ridicule; or 3) causes others to lose good will or confidence in that person. Romaine v. Kallinger, 109 N.J. 282, 289 (1988). A defamatory statement "tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." [Restatement (Second) of Torts § 559 (Am. L. Inst. 1977)]. "A plaintiff does not make a prima facie claim of defamation if the contested statement is essentially true." Hill v. Evening News Co., 314 N.J. Super. 545, 552 (App. Div. 1998).
>
> [Govito v. W. Jersey Health Sys., Inc., 332 N.J. Super. 293, 305 (App. Div. 2000).]

To prove defamation, a plaintiff must establish: "'(1) the assertion of a false and defamatory statement concerning another; (2) the unprivileged publication of that statement to a third party; and (3) fault amounting at least to negligence by the publisher.'" Leang v. Jersey City Bd. of Educ., 198 N.J. 557, 585 (2009) (quoting DeAngelis v. Hill, 180 N.J. 1, 13 (2004)). "The law of

defamation distinguishes between public figures and private persons." <u>Hill</u>, 314 N.J. Super. at 554. Our state, "like many other states, maintains a fault standard of negligence for defamation cases involving private-figure defendants." <u>W.J.A. v. D.A.</u>, 210 N.J. 229, 242 (2012).

The negligence standard requires a plaintiff to prove "that the speaker acted negligently in failing to ascertain the truth of the statement" by a "preponderance of the evidence." <u>Senna</u>, 196 N.J. at 474, 490 n.16. In contrast, where the subject speech "touch[es] on matters of public concern and interest," courts apply the "actual-malice standard." <u>Durando v. Nutley Sun</u>, 209 N.J. 235, 247 (2012); <u>see also</u> <u>Senna</u>, 196 N.J. at 474 (recognizing that a "plaintiff must prove actual malice" in cases where the speech involves "public officials, public figures, and the public interest"). That is so because "[s]peech that does not involve matters of public concern requires that greater weight be placed on an individual's interest in an unimpaired reputation." <u>Senna</u>, 196 N.J. at 491.

Here, plaintiff is not a public figure, and her medical records are not a matter of public concern. As such, her defamation claim should be evaluated under a negligence standard. Because the judge dismissed plaintiff's defamation claim on the ground that she failed to plead facts showing defendants' intent to defame as well as the judge's misapprehension of the applicability of the

common knowledge doctrine to the malpractice claim, we reverse the dismissal of count two and remand for further proceedings consistent with this opinion.

Finally, we address plaintiff's infliction of emotional distress claim. In count three, plaintiff alleged that as a result of the false statements in her medical records, she was "screened and involuntarily committed" to a medical center for twelve days for "psychological assessment" "on the ground that she was an imminent danger to others." Plaintiff asserted she "suffered shock," "horror," "humiliation," "emotional distress," and "damage to professional reputation," among other damages.

To establish a claim of negligent infliction of emotional distress, a plaintiff must prove that: "(1) defendant owed a duty to plaintiff; (2) defendant breached that duty; (3) plaintiff suffered severe emotional distress; and (4) defendant's breach proximately caused plaintiff's emotional distress." Johnson v. City of Hoboken, 476 N.J. Super. 361, 375-76 (App. Div. 2023). "Whether the defendant has a duty of care to the plaintiff depends on whether it was foreseeable that the plaintiff would be seriously, mentally distressed." Dello Russo v. Nagel, 358 N.J. Super. 254, 269-70 (App. Div. 2003); see also Johnson, 476 N.J. Super. at 376.

To establish a claim of intentional infliction of emotional distress, a plaintiff must prove that: "(1) defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; (3) the conduct proximately caused plaintiff's emotional distress; and (4) the emotional distress was 'so severe that no reasonable [person] could be expected to endure it.'" Johnson, 476 N.J. Super. at 375 (alteration in original) (quoting Ingraham v. Ortho-McNeil Pharm., 422 N.J. Super. 12, 20 (App. Div. 2011)). A defendant acts intentionally when he or she intends "'both to do the act and to produce emotional distress.'" Ingraham, 422 N.J. Super. at 19 (quoting Buckley v. Trenton Saving Fund Soc'y, 111 N.J. 355, 366 (1988)). A defendant may also be liable when he or she "'acts recklessly in deliberate disregard of a high degree of probability that emotional distress will follow.'" Ibid. (quoting Buckley, 111 N.J. at 366).

A Rule 4:6-2(e) dismissal of a complaint for "'failure to state a claim upon which relief can be granted'" tests "the legal sufficiency of the facts alleged on the face of the complaint." Printing Mart-Morristown, 116 N.J. at 745-46 (quoting R. 4:6-2(e)). On a motion to dismiss, a plaintiff is not required to prove the case, but need only "'make allegations which, if proven, would constitute a valid cause of action.'" Kieffer v. High Point Ins. Co., 422 N.J. Super. 38, 43

14

(App. Div. 2011) (quoting Leon v. Rite Aid Corp., 340 N.J. Super. 462, 472 (App. Div. 2001)).

A reviewing court must "'search[] the complaint in depth and with liberality to ascertain whether the fundament of a cause of action may be gleaned even from an obscure statement of claim, opportunity being given to amend if necessary.'" Printing Mart-Morristown, 116 N.J. at 746 (quoting Di Cristofaro v. Laurel Grove Mem'l Park, 43 N.J. Super. 244, 252 (App. Div. 1957)). A motion to dismiss should only be granted in "'the rarest of instances,'" where "'even a generous reading of the allegations does not reveal a legal basis for recovery.'" Kieffer, 422 N.J. Super. at 43 (first quoting Printing Mart-Morristown, 116 N.J. at 772; and then quoting Edwards v. Prudential Prop. & Cas. Co., 357 N.J. Super. 196, 202 (App. Div. 2003)).

Here, the judge determined plaintiff failed to state a claim upon which relief could be granted because "there [was] simply not a cause of action that c[ould] be gleaned . . . or that c[ould] move forward as a matter of law." We disagree. A cause of action for infliction of emotional distress may be inferred from the factual allegations in plaintiff's complaint. Printing Mart-Morristown, 116 N.J. at 746. Plaintiff has pled facts that adequately establish the elements of an intentional or negligent infliction of emotional distress claim.

Undoubtedly, erroneous documentation of schizophrenia in plaintiff's medical records that resulted in a twelve-day involuntary commitment could give rise to a cause of action for infliction of emotional distress, whether negligent or intentional. At the very least, if necessary, plaintiff should have been afforded an opportunity to amend the complaint either by clarifying or amplifying the allegations. See ibid. Accordingly, we reverse the dismissal of count three and remand for further proceedings consistent with this opinion. Nothing in our opinion should be construed as an expression of our views regarding the merits of the claims.

Reversed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3499-22